PER CURIAM.
Appellant Carlos Nieves appeals his conviction for attempted second-degree murder with a firearm, two counts of shooting or throwing a deadly missile into an occupied vehicle, and two counts of aggravated assault with a firearm. We affirm.
On November 23, 2000, Nieves drove co-worker Amel Desada home. Approximately one-half block from Desada’s residence, Nieves came to an abrupt stop because the vehicle in which Reynol Guerrero, Roberto Marichal, Monica Mar-ichal, and an infant were riding had stopped in front of Nieves’ vehicle. Guerrero approached Nieves’ car and an argument ensued regarding Nieves’ purported threats against Roberto Marichal, Guerrero’s cousin. Following the exchange of heated words, Guerrero returned to his car. Nieves exited his vehi- *437 ele and began discharging his firearm at the occupants of the other vehicle. At least six bullets struck the victims’ vehicle.
At trial, Nieves claimed that the victims were attempting to rob him. He further asserted that Guerrero brandished a firearm and threatened to kill him if he did not give Guerrero his money. Additionally, Nieves stated that a witness would testify that the victims had earlier gone to Nieves’ workplace looking for him. Based on these assertions at trial, Nieves claimed self-defense.
Nieves argues that the trial court violated his constitutional right to confront his accusers by not allowing him to cross-examine Roberto Marichal as to Marichal’s probationary status due to possession of cocaine. Nieves interprets one specific line from the transcripts as a blanket prohibition of cross-examination, but the transcripts unequivocally demonstrate that the trial court judge made no such prohibition.[1] Rather, the judge outlined the proper format of impeaching the witness.[2] Additionally, the trial court did not prevent Nieves from impeaching Marichal by showing bias, since Nieves never attempted to cross-examine Marichal on the issue of bias.
Nieves contends that the State had discretion as to Marichal’s probationary status and would show leniency in exchange for favorable testimony. If this were a possibility, then Nieves would have been able to impeach on the basis of bias. See Livingston v. State, 678 So.2d 895, 897(Fla. 4th DCA 1996)(holding that all witnesses are subject to cross-examination for purpose of discrediting them by showing bias, prejudice or interest.) See also Morrison v. State, 818 So.2d 432 (Fla.2002); Carey v. State, 705 So.2d 977 (Fla. 4th DCA 1998); Watts v. State, 450 So.2d 265 (Fla. 2d DCA 1984). However, no such argument was made to the trial court.
Nieves further alleges that the trial court erred when it refused to allow him to call a witness who would testify that the alleged victims had come to Nieves’ place of business earlier in the day. He argues that this testimony was both relevant and material and would serve to impeach Mari-chal because Marichal denied going to Nieves’ workplace. Nieves claims that exclusion of the witness is reversible error because the proffered testimony raises doubt as to the victims’ intentions towards him and therefore goes to “the very heart of the case.”
The trial court did not abuse its discretion by excluding a defense witness whose testimony had no relevance to any material issue at trial. See Wilchcombe v. State, 842 So.2d 198 (Fla. 3d DCA 2003)(holding that the trial court exercises broad discretion in admission of evidence and in determining whether its probative value outweighs any prejudicial effect.) The victims’ supposed appearance at Nieves’ place of work would not be sufficient to establish any kind of motive or intent to commit a crime. Any such inferences by the witness would be purely speculative and barred as irrelevant because the testimony does not go towards proving a material fact in the case.
Even assuming that Nieves was the victim of an attempted robbery, he testified that he discharged his firearm after the alleged robbers had already returned *438 to their car. Prior to firing his weapon, Nieves had ample opportunity to “escape danger,” thus undermining his self-defense claim.[3]
Nieves also argues that the court erred by not allowing him to question a state witness regarding knowledge of Nieves’ lack of reputation for violence. Nieves maintains that proving he does not have a reputation for violence in the community goes directly to his defense that he was the victim of an attempted robbery. Nieves contends that he should be allowed to present witnesses to testify as to his pacific reputation in the community. We disagree. See Morrison v. State, 818 So.2d 432 (Fla.2002)(finding that for a party to use character evidence to establish the reputation of a defendant, reputation evidence must be sufficiently broad-based and should not be predicated on mere personal opinion, fleeting encounters, or rumor). We conclude that the trial court properly denied admission of character witness testimony.
Affirmed.

. Nieves quotes the trial judge as saying "you can’t go into that.” Nieves takes this out of context and implies that the judge simply refused to allow the testimony without any justification.

. The judge stated: "have you ever been convicted of a crime—of a felony or crime involving moral turpitude. That is the question.”

. Fla. Stat. § 776.041 provides: "The justification described in the preceding sections of this chapter is not available to a person who:
(2)(a)has [not] exhausted every reasonable means to escape such danger other than the use of force which is likely to cause death or great bodily harm to the assailant.”